ANDREW R. MUEHLBAUER, ESQ.
Nevada Bar No. 10161
**MUEHLBAUER LAW OFFICE, LTD.**
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: 702.330.4505
Facsimile: 702.825.0141
Email: andrew@mlolegal.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| MARC BERNSTEIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MP MATERIALS CORP. f/k/a FORTRESS VALUE ACQUISITION CORP., JAMES H. LITINSKY, RYAN CORBETT, ANDREW A. MCKNIGHT, and DANIEL N. BASS,<br><br>Defendants. | Case No. 2:22-cv-00315<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Marc Bernstein ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press

releases published by and regarding MP Materials Corp. f/k/a Fortress Value Acquisition Corp. ("MP Materials" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired MP Materials securities between May 1, 2020 and February 2, 2022, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     MP Materials engages in the ownership and operation of integrated rare earth mining and processing facilities.  The Company was previously known as "Fortress Value Acquisition Corp." ("FVAC") and operated as a special purpose acquisition company ("SPAC").[1]

3.     In November 2020, FVAC consummated a merger with MP Mine Operations LLC ("MPMO") and Secure Natural Resources LLC ("SNR" and, collectively with MPMO, "Legacy MP Materials"), whereby, among other things, Legacy MP Materials became an indirect wholly-owned subsidiary of FVAC, and FVAC changed its name from "Fortress Value

---

[1] A SPAC, also called a blank-check company, is a development stage company that has no specific business plan or purpose or has indicated its business plan is to engage in a merger or acquisition with an unidentified company or companies, other entity, or person.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Acquisition Corp." to "MP Materials Corp." (the "Business Combination").  As a result of the Business Combination, the Company began to own and operate the Mountain Pass Rare Earth Mine and Processing Facility ("Mountain Pass") in California.

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) FVAC had overstated its due diligence efforts and expertise with respect to identifying target companies to acquire; (ii) FVAC performed inadequate due diligence into Legacy MP Materials prior to the Business Combination, or else ignored significant red flags regarding, *inter alia*, Legacy MP Materials' management, compliance policies, and Mountain Pass's profitability; (iii) as a result, the Company's future business and financial prospects post-Business Combination were overstated; (iv) MP Materials engaged in an abusive transfer price manipulation scheme with a related party in the People's Republic of China ("China") to artificially inflate the Company's profits; (v) MP Materials' ore at Mountain Pass was not economically viable to harvest for rare earth metals; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.     On February 3, 2022, Bonitas Research published a report (the "Bonitas Report") accusing MP Materials of executing an "abusive transfer price manipulation scheme" with a related party in China, Shenghe Resources Holding Co., Ltd. ("Shenghe"), which owned 7.7% of the Company as of March 22, 2021.  Specifically, the Bonitas Report alleged that, since the second quarter of 2021 ("2Q21"), MP Materials and Shenghe "executed an abusive transfer price manipulation scheme whereby Shenghe overpaid for MP [Materials] concentrates to artificially inflate MP [Materials'] profits, [which] conveniently coincided with the SPAC

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

insider lock-up expiration so that MP [Materials] insiders could sell MP [Materials] stock at artificially inflated prices."  In addition, the Bonitas Report cited a September 2019 German academic study that concluded MP [Materials'] ore at Mountain Pass is "not economically viable to harvest for rare earth metals while 12 of the other 13 well known rare earth mines outside of China are economically feasible" at current market prices.

6.    On this news, MP Materials' stock price fell $5.61 per share, or 14.25%, to close at $33.75 per share on February 3, 2022, on unusually heavy trading volume of 12,371,789 shares.

7.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  MP Materials is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

11.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12.    Plaintiff, as set forth in the attached Certification, acquired MP Materials securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.    Defendant MP Materials is a Delaware corporation with principal executive offices located at 6720 Via Austi Parkway, Suite 450, Las Vegas, Nevada 89119.   MP Materials' common stock trades in an efficient market on the New York Stock Exchange ("NYSE") under the trading symbol "MP".   Prior to the Business Combination, the Company was a Delaware corporation with principal executive offices located at 1345 Avenue of the Americas, 46th Floor, New York, New York 10105, and its Class A common stock, redeemable warrants, and units traded on the NYSE under the trading symbols "FVAC", "FVAC WS", and "FVAC.U", respectively.

14.    Defendant James H. Litinsky ("Litinsky") has served as MP Materials' Chairman and Chief Executive Officer ("CEO") at all relevant times following the Business Combination.

15.    Defendant Ryan Corbett ("Corbett") has served as MP Materials' Chief Financial Officer ("CFO") at all relevant times following the Business Combination.

16.    Defendant Andrew A. McKnight ("McKnight") served as MP Materials' CEO at all relevant times prior to the Business Combination.

17.    Defendant Daniel N. Bass ("Bass") served as MP Materials' CFO at all relevant times prior to the Business Combination.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

18. Defendants Litinsky, Corbett, McKnight, and Bass are sometimes referred to herein as the "Individual Defendants."

19. The Individual Defendants possessed the power and authority to control the contents of MP Materials' SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of MP Materials' SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with MP Materials, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

20. MP Materials and the Individual Defendants are collectively referred to herein, in whole or in part, as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

21. MP Materials engages in the ownership and operation of integrated rare earth mining and processing facilities. The Company was previously known as "Fortress Value Acquisition Corp." and operated as a SPAC.

22. In November 2020, FVAC consummated a merger with Legacy MP Materials, whereby, among other things, Legacy MP Materials became an indirect wholly-owned subsidiary of FVAC, and FVAC changed its name from "Fortress Value Acquisition Corp." to "MP Materials Corp." As a result of the Business Combination, the Company began to own

and operate Mountain Pass in California.   MPMO acquired the Mountain Pass mine and processing facilities in July 2017, and SNR holds the mineral rights to the Mountain Pass mine and surrounding areas as well as intellectual property rights related to the processing and development of rare earth minerals.

23.    Legacy MP Materials and, following the Business Combination, MP Materials, has historically transacted with Shenghe, a related party in China.   Particularly, since 2017, Legacy MP Materials had entered into several commercial and restated agreements with Shenghe, whereby Shenghe would, *inter alia*, help finance Legacy MP Materials' operations at Mountain Pass and purchase its rare earth materials, before reselling those materials to customers in China.   The Company continued to operate under restated and amended agreements with Shenghe following the Business Combination.

### Materially False and Misleading Statements Issued During the Class Period

24.    The Class Period begins on May 1, 2020, when MP Materials—then still known as FVAC—filed a prospectus on Form 424B4 with the SEC in connection with its initial public offering (the "Prospectus").   With respect to FVAC's purported business strategy, that filing stated, among other things, that the Company "intend[s] to deploy a pro-active, thematic sourcing strategy"; that "[o]ur selection process will leverage our team's network of industry, private equity sponsor, credit fund sponsor and lending community relationships as well as relationships with management teams of public and private companies, investment bankers, restructuring advisers, attorneys and accountants"; and that FVAC's management would utilize a "disciplined process of pursuing and reviewing promising leads."

25.    With respect to FVAC's purported acquisition criteria, the Prospectus represented that the Company "intend[s] to seek to acquire one or more businesses that we

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

believe . . . exhibit unrecognized value or other characteristics that we believe have been misevaluated by the marketplace based on our company specific analysis and due diligence review"; that "this process will include, among other things, a review and analysis of the company's capital structure, quality of earnings, potential for operational improvements, corporate governance, customers, material contracts, and industry background and trends"; and that the Company "intend[s] to leverage the operational experience and disciplined investment approach of our team to identify opportunities to unlock value that our experience in complex situations allows us to pursue."

26.     Moreover, as part of FVAC's purported acquisition process, the Prospectus assured investors that "[i]n evaluating a prospective target business, we expect to conduct a thorough due diligence review[,]" including "meetings with incumbent management and employees, document reviews, inspection of facilities, as well as a review of financial, operational, legal and other information which will be made available to us."

27.     On June 9, 2020, MP Materials filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2020 (the "1Q20 10-Q").  That filing stated, in relevant part:

> [W]e will be using . . . funds for identifying and evaluating prospective acquisition candidates, performing business due diligence on prospective target businesses, traveling to and from the offices, plants or similar locations of prospective target businesses, reviewing corporate documents and material agreements of prospective target businesses, selecting the target business to acquire and structuring, negotiating and consummating the Business Combination.

28.     Appended as exhibits to the 1Q20 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants McKnight and Bass certified that "[t]he [1Q20 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the

[Exchange Act]" and that "[t]he information contained in the [1Q20 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

29.     On July 15, 2020, Legacy MP Materials issued a press release announcing the contemplated Business Combination with FVAC (the "July 2020 Press Release").  That press release quoted Defendant McKnight, who stated:

> We believe MP Materials is a compelling opportunity to invest in an irreplaceable, world-class asset at a point in time when demand from electric vehicles, wind turbines, and other technologies is hitting an inflection point, and while the need to find a reliable and resilient source for rare earths is crucial for the U.S. and global supply chain. The electrification of global transportation and infrastructure will be a dominant investment theme over the next several decades, leading to demand for rare earths rapidly outpacing current levels of production and supply. Mountain Pass is the only scaled North American source of supply for these materials, and Jim and his team have already restored Mountain Pass as a global leader in the rare earth market. Together, we will leverage that foundation into a transformational opportunity at a critical time for our nation.

30.     The July 2020 Press Release also quoted Defendant Litinsky, who stated, in relevant part:

> This business combination and becoming a public company is a key milestone in MP Materials' mission to restore the full rare earth supply chain to the United States of America . . . . To achieve our mission, we must be economically competitive and hold ourselves to the highest standards for the benefit of our investors, employees, communities, country, and the environment.

31.     Moreover, the July 2020 Press Release represented that "MP Materials' Mountain Pass site contains one of the richest rare earth deposits in the world, with average ore grade of approximately 8%, and includes state-of-the-art processing and separation facilities."

32.     Also on July 15, 2020, on a conference call to discuss the anticipated Business Combination, Defendant McKnight reiterated:

> While I think you can say MP Materials and Mountain Pass is truly a one-of-a-kind asset, what I think makes us so excited about this opportunity is the unique inflection point that we're seeing come together with electric vehicle demand, wind turbines and other advanced technologies, coupled with the urgent need for

9

independent, resilient and reliable supply chains sourced in North America. We believe MP Materials is positioned to be the world-wide leader in rare earths mining and refining, at a time when the world is really in need of one.

33.     On the same conference call, Defendant Litinsky stated, *inter alia*:

MP Materials operates Mountain Pass, a one-of-a-kind asset uniquely positioned to bring a leading source of rare earth materials back to North America . . . I can't say enough times how truly unique Mountain Pass is. From a Western perspective, it's the only game in town for scaled rare earth production.

34.     On July 31, 2020, MP Materials filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2020 (the "2Q20 10-Q"). That filing contained the same statements as referenced in ¶ 27, *supra*, regarding the Company's due diligence efforts in identifying target companies to acquire.

35.     Appended as exhibits to the 2Q20 10-Q were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by Defendants McKnight and Bass.

36.     On November 4, 2020, the Company filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2020 (the "3Q20 10-Q"). That filing contained the same statements as referenced in ¶ 27, *supra*, regarding the Company's due diligence efforts in identifying target companies to acquire.

37.     Appended as exhibits to the 3Q20 10-Q were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by Defendants McKnight and Bass.

38.     On November 17, 2020, MP Materials issued a press release announcing the completion of the Business Combination (the "November 2020 Press Release"). That press release quoted Defendant Litinsky, who stated, in relevant part, that "MP Materials has a profitable first stage business, a long term, multi-stage execution roadmap for value creation, a fully funded balance sheet, and a committed leadership team and Board of Directors[,]" and that

10

"[o]ur team is very proud to lead the way in onshoring a vital industry, to build a growing enterprise and to deliver positive outcomes to all of our stakeholders supported by our foundational commitments to sustainability and strong governance."

39.     On March 22, 2021, MP Materials filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2020 (the "2020 10-K").  That filing characterized Mountain Pass as "one of the world's richest rare earth deposits, co-located with integrated state-of-the-art processing and separation facilities[,]" while assuring investors that "[c]urrent ownership and management . . . restarted operations from cold-idle status and embarked on a deliberate, two-stage plan to optimize the facility and position the Company for growth and profitability."

40.     Appended as exhibits to the 2020 10-K were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by Defendants Litinsky and Corbett.

41.     On May 13, 2021, MP Materials filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2021 (the "1Q21 10-Q").  The 1Q21 10-Q contained substantively the same statements as referenced in ¶ 39, *supra*, regarding Mountain Pass's purportedly rich rare earth deposits and the Company's two-stage plan to optimize the facility and position the Company for growth and profitability.

42.     Appended as exhibits to the 1Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by Defendants Litinsky and Corbett.

43.     On August 5, 2021, MP Materials issued a press release announcing the Company's 2Q21 results (the "2Q21 Press Release").  That press release reported that "[r]evenue increased 141% year-over-year, driven by increases in the realized sales prices of

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

rare earth oxide ('REO') in concentrate[,]" with "[t]he realized sales price increase of 137% . . . due to higher demand for rare earths driving increased market prices."

44.     The 2Q21 Press Release further reported that "[a]djusted EBITDA [earnings before interest, taxes, depreciation, and amortization] increased 491% year-over-year, driven by higher per-unit profitability," with "[p]er unit profitability improvements . . . driven primarily by higher realized prices."

45.     Additionally, the 2Q21 Press Release reported that "[n]et income was $27.2 million compared to a net loss of $62.5 million in the prior year period[,]" which "was mainly due to a $66.6 million one-time, non-cash charge related to the cancellation of a distribution and marketing agreement in the prior year period, as well as the significantly higher Adjusted EBITDA in the second quarter of 2021"; and that "Adjusted Net Income increased by 583% year-over-year to $33.4 million, mainly due to the higher Adjusted EBITDA[.]"

46.     The 2Q21 Press Release also quoted Defendant Litinsky, who represented, in relevant part:

> MP Materials' second quarter results demonstrate our strong execution as demand for rare earth materials continues to grow. The MP team produced the highest quarterly REO output in Mountain Pass history, driving revenues to more than double and Adjusted EBITDA to increase nearly six times compared to the second quarter of 2020[.]

47.     That same day, MP Materials hosted a conference call with investors and analysts to discuss the Company's 2Q21 results (the "2Q21 Investor Call").  In his prepared remarks for that call, Defendant Litinsky represented, *inter alia*:

> The combination of solid production and net [ph] sales volume as well as higher pricing resulted in record financials, as our revenue more than doubled year-over-year. This and continued solid cost control resulted in adjusted EBITDA increasing nearly six-fold. Importantly, our adjusted EBITDA margin also hit an all-time high of 64%, demonstrating the leverage we get from strong NdPr [neodymium-praseodymium] pricing.

48.     Also in his prepared remarks on the 2Q21 Investor Call, Defendant Corbett represented, *inter alia*:

> [Y]ou can see the bigger impact that demand for NdPr is having on our business, with the realized pricing of REO up 137% to $7,343 per metric ton, also up a strong 25% sequentially. I would point out that there is often a slight lag between observed market prices and our realized price as we ultimately true-up our contract prices to our spot price recognized upon the product sale overseas.
>
> * * *
>
> [W]hat is for the most part the simple P times Q of our business that is realized price times metric tons sold drove $73.1 million of revenue in the quarter up 141% over last year. And demonstrating the leverage in the business from the price of our concentrate as well as our solid cost management, adjusted EBITDA increased nearly six times to $46.4 million and was up a strong 41% sequentially. This leverage also translated into improving adjusted EBITDA margins as they increased 37 percentage points versus Q2 2022 to 64% in the quarter and increased 7 percentage points quarter over quarter. And adjusted EBITDA performance combined with the very low cost of debt on our balance sheet resulted in adjusted net income increasing significantly, up nearly 6 times to $33.4 million[.]

49.     During the question-and-answer ("Q&A") portion of the 2Q21 Investor Call, a Cowen analyst remarked on the "inordinately high" price received for MP Materials' rare earth products in 2Q21, and asked "what would have driven such a high sales realization this quarter?"  Defendant Litinsky punted the question to Defendant Corbett, who responded, in relevant part:

> I would say that concentrate tends to occasionally have discrete supply and demand drivers that are not perfectly aligned with what you see in market data for NdPr as an example. And so obviously given the inordinate proportion of supply that we represent. In our opinion, it just, it shows the very, very strong demand for our product.
>
> And so while our pricing does tend to mimic very closely the movements in NdPr that you can observe and tends to do so with some amount of lag, which could explain some of the higher pricing in Q2. That's really the driver here nothing having to do with the mix of products sold.

50.     On August 9, 2021, MP Materials filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2021 (the "2Q21 10-Q").   That filing stated that "[t]he Company and Shenghe enter into separate product sales agreements in which Shenghe purchases all newly-produced material at specified prices[,]" and that "[p]roduct sales from these agreements were $72.2 million and $131.9 million for the three and six months ended June 30, 2021, respectively, as compared to $30.2 million and $50.8 million for the three and six months ended June 30, 2020, respectively[.]"

51.     With further respect to MP Materials' sales performance in the quarter, the 2Q21 10-Q stated, *inter alia*:

> Product sales, which consists primarily of our sales of REO concentrate to Shenghe, increased year over year by $42.7 million, or 141%, to $73.1 million for the three months ended June 30, 2021. The increase was driven primarily by higher realized price per REO MT [metric ton], which increased by 137% year over year for the three months ended June 30, 2021, reflecting higher demand for rare earth products . . . .

> Product sales increased year over year by $82.0 million, or 160%, to $133.1 million for the six months ended June 30, 2021. The increase was driven by higher REO sales volume, which increased by 1,052 MTs, or 6%, to 19,670 MTs for the six months ended June 30, 2021, as compared to the prior year period, and a higher realized price per REO MT, which increased by 132% year over year for the six months ended June 30, 2021, reflecting higher demand for rare earth products.

52.     With respect to MP Materials' compliance with SEC reporting requirements, the 2Q21 10-Q stated, in relevant part:

> [O]ur principal executive officer and principal financial officer concluded that the Company's disclosure controls and procedures were effective as of June 30, 2021, to ensure that information required to be disclosed by the Company in reports we file or submit under the Exchange Act is (i) recorded, processed, summarized, evaluated and reported, as applicable, within the time periods specified in the [SEC]'s rules and forms and (ii) accumulated and communicated to the Company's management, including the Company's principal executive officer

14

and principal financial officer, as appropriate to allow timely decisions regarding required disclosures.

There were no changes that occurred during the fiscal quarter covered by this Form 10-Q that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

53.     Appended as exhibits to the 2Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by Defendants Litinsky and Corbett.

54.     On November 4, 2021, MP Materials issued a press release announcing the Company's third quarter 2021 results (the "3Q21 Press Release").  That press release reported that "[r]evenue increased 143% year-over-year, driven by increases in the realized sales prices of rare earth oxide ('REO') in concentrate as well as metric tons ('MT') of REO sold[,]" with "[t]he realized sales price increase of 127% . . . due to higher demand for rare earths driving increased market prices."

55.     The 3Q21 Press Release further reported that "[a]djusted EBITDA increased 488% year-over-year, driven by higher per-unit profitability," with "[p]er unit profitability improvements . . . driven primarily by higher realized prices."

56.     Additionally, the 3Q21 Press Release reported that "[n]et income increased 192% year-over-year, driven by the significantly higher Adjusted EBITDA in the third quarter of 2021[,]" and that "Adjusted Net Income increased by 617% year-over-year to $52.0 million, mainly due to the higher Adjusted EBITDA[.]"

57.     The 3Q21 Press Release also quoted Defendant Litinsky, who represented, in relevant part, that "[t]he MP Materials team continues to deliver, with record quarterly production and shipments driving strong growth in revenue and Adjusted EBITDA," and that "[o]ur performance reflects continued execution and cost discipline at Mountain Pass coupled with strong global demand for rare earth materials."

58.     That same day, MP Materials hosted a conference call with investors and analysts to discuss the Company's third quarter 2021 results (the "3Q21 Investor Call"). In his prepared remarks for that call, Defendant Litinsky represented, *inter alia*:

> Strong global demand for Rare Earth materials resulted in a 127% year-over-year increase in realized prices. This is being driven primarily by NDPR as well as other magnetic rares contained in our concentrate. The combination of higher volumes and higher pricing led to revenues more than doubling year-over-year to $99.8 million.
>
> The strong pricing, combined with continued diligent cost management helped to demonstrate the leverage in our operating model with adjusted EBITDA increasing nearly 6x year-over-year to $68.3 million. And along with this performance, we delivered operational efficiency improvements as our unit production costs declined nearly 6% from the second quarter of 2021.

59.     Also in his prepared remarks on the 3Q21 Investor Call, Defendant Corbett represented, *inter alia*:

> [A]s [Defendant Litinsky] mentioned, our realized pricing remains very strong and grew 5% sequentially, driven by continued strength in NDPR prices.
>
> * * *
>
> Revenues of nearly $100 million were up 143% year-over-year and 36% sequentially, driven by the simple p times Q I highlighted on the prior slide. The revenue growth and solid cost containment resulted in EBITDA growing nearly sixfold to $68.3 million, which was 47% higher than the second quarter.
>
> Adjusted EBITDA margins improved from 36% last year to 68% in the current quarter and improved over the 64% margin in Q2. You can also see the leverage in our model when you look at the incremental margin between Q2 and Q3. Specifically, adjusted EBITDA increased $21.9 million from 2Q to 3Q, while revenue increased $26.7 million. That's an incremental margin of 82%, an awesome result, given much of the growth was through volume, not price.
>
> As we typically see that EBITDA improvement flowed nicely to the bottom line as our adjusted net income grew over 7x versus last year to $52 million, which was also a 55% improvement over the second quarter.

16

60.     During the Q&A portion of the 3Q21 Investor Call, Defendant Litinsky again represented that strong demand was driving MP Materials' price increases, stating, in relevant part:

> Not that this has anything to do with, but you've obviously seen NDPR prices continue to go higher. And I think that's probably driven by just the enormous demand. I mean, I think the intensity of the reach outs that we have received from parties has increased even more so than last quarter. So I think that's a function of the increased realization of potential shortages of materials.

61.     On November 10, 2021, MP Materials filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2021 (the "3Q21 10-Q"). That filing stated that "[t]he Company and Shenghe enter into separate product sales agreements in which Shenghe purchases all newly-produced material at specified prices[,]" and that "[p]roduct sales from these agreements were $97.3 million and $229.2 million for the three and nine months ended September 30, 2021, respectively, as compared to $40.9 million and $91.7 million for the three and nine months ended September 30, 2020, respectively[.]"

62.     With further respect to MP Materials' sales performance in the quarter, the 3Q21 10-Q stated, *inter alia*:

> Product sales increased year over year by $57.7 million, or 141%, to $98.6 million for the three months ended September 30, 2021. The increase was driven by higher REO sales volume, which increased by 3,385 MTs, or 36%, to 12,814 MTs for the three months ended September 30, 2021, as compared to the prior year period, and a higher realized price per REO MT, which increased by 127% year over year for the three months ended September 30, 2021, reflecting higher demand for rare earth products. The increase in REO sales volume for the three months ended September 30, 2021, as compared to the prior year period, reflects an increase in REO production volume . . . .
>
> Product sales increased year over year by $139.1 million, or 152%, to $230.8 million for the nine months ended September 30, 2021. The increase was driven by higher REO sales volume, which increased by 4,437 MTs, or 16%, to 32,484 MTs for the nine months ended September 30, 2021, as compared to the prior

year period, and a higher realized price per REO MT, which increased by 132% year over year for the nine months ended September 30, 2021, reflecting higher demand for rare earth products. The increase in REO sales volume for the nine months ended September 30, 2021, as compared to the prior year period, primarily reflects an increase in REO production volume.

63.   The 3Q21 10-Q also contained substantively the same statements as referenced in ¶ 52, *supra*, regarding MP Materials' purported compliance with SEC reporting requirements.

64.   Appended as exhibits to the 3Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by Defendants Litinsky and Corbett.

65.   The statements referenced in ¶¶ 24-64 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) FVAC had overstated its due diligence efforts and expertise with respect to identifying target companies to acquire; (ii) FVAC performed inadequate due diligence into Legacy MP Materials prior to the Business Combination, or else ignored significant red flags regarding, *inter alia*, Legacy MP Materials' management, compliance policies, and Mountain Pass's profitability; (iii) as a result, the Company's future business and financial prospects post-Business Combination were overstated; (iv) MP Materials engaged in an abusive transfer price manipulation scheme with Shenghe to artificially inflate the Company's profits; (v) MP Materials' ore at Mountain Pass was not economically viable to harvest for rare earth metals; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**The Truth Emerges**

66.     On February 3, 2022, Bonitas Research published a report accusing MP Materials of executing an "abusive transfer price manipulation scheme" with Shenghe, which owned 7.7% of the Company as of March 22, 2021.  Specifically, the Bonitas Report alleged, *inter alia*:

> We believe that since 2Q'21, MP [Materials] and Shenghe executed an **abusive transfer price manipulation scheme** whereby Shenghe overpaid for MP [Materials] concentrates to artificially inflate MP [Materials'] profits. The 2021 scheme conveniently coincided with the SPAC insider lock-up expiration so that MP [Materials] Insiders could sell MP [Materials] stock at artificially inflated prices.
>
> As a result, **Shenghe's profits collapsed, MP [Materials'] profits soared, and MP [Materials] Insiders dumped** US$ 400+ million worth of MP [Materials] stock in 2021 (this figure may increase as we await Shenghe's yearly reported changes to MP [Materials] shareholdings).
>
> Evidence of transfer mispricing first appeared in 2Q'21 Chinese Customs records and Shenghe's Chinese quarterly result segment disclosures. Chinese Customs records show 2Q'21 was the first time that Shenghe paid MP [Materials] above market price as compared to Shenghe's reported resale price. Shenghe's Chinese filings show that in 2Q'21 & 3Q'21, Shenghe's gross margins collapsed to 4% and 0.3%, respectively, down from ~25-30% on average since 2018.

(Emphases in original.)

67.     The Bonitas Report further elaborated on Legacy MP Materials' prior arrangements with Shenghe, and the Company's mutually beneficial relationship with the Chinese related party post-Business Combination, stating, in relevant part:

> In June 2020, MP [Materials] and Shenghe amended and restated their offtake agreement in preparation for a NYSE public listing making Shenghe's incentive structure change to inflate MP [Materials] stock.
>
> In 4Q'20, MP [Materials'] stock traded higher and Shenghe was rewarded earnout shares valued at US$ 55 million (RMB 379 million), equal to 74% of Shenghe's 2020 reported net profits, boosting its income statement.

\* \* \*

19

> As of 2Q'21, Shenghe's segment gross profit declined but its balance sheet assets soared by US$ 500+ million (RMB 3.2 billion). Shenghe's ownership of MP [Materials] stock accounted for ~24% of Shenghe's total assets as of FYE'20 & 1H'21, boosting its balance sheet.

68.     The Bonitas Report further alleged that a September 2019 German academic study had concluded MP Materials' ore at Mountain Pass was not economically viable to harvest for rare earth metals, stating, *inter alia*:

> In September 2019, an economic feasibility study published by researchers at RWTH Aachen University in Germany assessed rare earth ore mining outside of China (the "German Study").

> The German Study was conducted to objectively compare fourteen (14) advanced rare earth projects outside of China to get a detailed picture of the economic viability of possible rare earth mining outside of China.

> The German Study found that MP [Materials'] ore was not economically viable to harvest for rare earth metals while 12 of 13 other well known rare earth mines outside of China are economically feasible near today's current market prices.

> As of 3Q'21, Lynas Rare Earths, Ltd. (ASX: LYC) ("Lynas"), a publicly listed Australian rare earth oxide ("REO") producer, operates the Mount Weld mine and recently reported REO average selling prices within the German Study's price assumption range suggesting to us that the German Study is applicable to today's rare earth prices.[]

> The German Study modeled the economic value of each rare earth project under multiple price and cost of capital assumptions. In each case, Mountain Pass was ranked the least desireable [*sic*] mine for rare earth metals because MP [Materials'] ore content is so low in high-value critical rare earth metals such as Dysprosium, Neodymium, Europium, Terbium, and Yttrium.

69.     Following publication of the Bonitas Report, MP Materials' stock price fell $5.61 per share, or 14.25%, to close at $33.75 per share on February 3, 2022, on unusually heavy trading volume of 12,371,789 shares.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

70.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

71.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired MP Materials securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

72.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, MP Materials securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by MP Materials or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

73.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

74.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

75.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of MP Materials;

- whether the Individual Defendants caused MP Materials to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of MP Materials securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

76.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

77.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- MP Materials securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold MP Materials securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

78.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

79.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## FIRST CLAIM FOR RELIEF

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

80.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

81.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

82.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of MP Materials securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire MP Materials securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

83.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for MP Materials securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about MP Materials' finances and business prospects.

84.     By virtue of their positions at MP Materials, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

85.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of MP Materials, the Individual Defendants had knowledge of the details of MP Materials' internal affairs.

86.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of MP Materials.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to MP Materials' businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of MP Materials securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning MP Materials' business and financial condition which were concealed by Defendants, Plaintiff and the other

25

members of the Class purchased or otherwise acquired MP Materials securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

87. During the Class Period, MP Materials securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of MP Materials securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of MP Materials securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of MP Materials securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

88. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

89. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SECOND CLAIM FOR RELIEF**

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

90.     The Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

91.     During the Class Period, the Individual Defendants participated in the operation and management of MP Materials, and conducted and participated, directly and indirectly, in the conduct of MP Materials' business affairs.  Because of their senior positions, they knew the adverse non-public information about MP Materials' misstatement of income and expenses and false financial statements.

92.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to MP Materials' financial condition and results of operations, and to correct promptly any public statements issued by MP Materials which had become materially false or misleading.

93.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which MP Materials disseminated in the marketplace during the Class Period concerning MP Materials' results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause MP Materials to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of MP Materials within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of MP Materials securities.

94.     Each of the Individual Defendants, therefore, acted as a controlling person of MP Materials.   By reason of their senior management positions and/or being directors of MP Materials, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, MP Materials to engage in the unlawful acts and conduct complained of herein.   Each of the Individual Defendants exercised control over the general operations of MP Materials and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

95.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by MP Materials.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  February 22, 2022

Respectfully submitted,

**MUEHLBAUER LAW OFFICE, LTD.**

*/s/ Andrew R. Muehlbauer*
ANDREW R. MUEHLBAUER, ESQ.
Nevada Bar No. 10161
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: 702.330.4505
Facsimile: 702.825.0141
andrew@mlolegal.com

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

**WOHL & FRUCHTER LLP**
Joshua E. Fruchter
(*pro hac vice* application forthcoming)
25 Robert Pitt Drive, Suite 209G
Monsey, New York 10952
Telephone: (845) 290-6818
Facsimile: (718) 504-3773
jfruchter@wohlfruchter.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS